IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 7, 2010 Session

## ROBERT A. LEEDY v. THE REALTY STORE, INC., ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 07-08-339     Telford E. Forgety, Jr., Chancellor**

**No. E2009-01379-COA-R3-CV - FILED JULY 26, 2010**

The individual principals in this appeal are Robert A. Leedy and Judy L. Jones. The dispute arises from their joint ownership of a business operated as The Realty Store, Inc. ("the Agency"). Differences arose in September 2005 and the principals executed numerous documents, including quitclaim deeds dividing up jointly-held real properties as well as transfer agreements on businesses they had operated together. Leedy transferred to Jones all "right, title and interest" in the Agency, and, at the same time, Leedy signed a document pursuant to which he continued to be associated with the Agency as an "independent contractor." Under his independent contractor agreement, he was to receive a commission of 10% of the income brought to the Agency by way of Leedy's property management accounts. After September 2005, Leedy continued to deposit receipts into a property management escrow account that he had opened prior to September 2005. However, after paying property owners and expenses, Leedy used the balance of the funds in the account as his own rather than pay them into the Agency. When she became aware of this, Jones caused a criminal investigation to be initiated against Leedy, and Leedy, in turn, filed his complaint initiating this action against Jones. He claimed, among other things, that the Agency was operated as a partnership, even after September 2005, and that he was entitled to an accounting and his share of the profits. Jones filed a counterclaim seeking to recover business funds that Leedy used for his personal benefit, both before and after September 2005. As the trial date approached, Leedy moved for a continuance on the basis of Jones's withholding of, and late production of, voluminous documents. The trial court denied the motion. After a bench trial, the court found that, in September 2005, the principals "settled up" their affairs and that thereafter Leedy wrongfully took an excess of $131,489.99, for which the court gave the Agency a judgment. The court declined to award the Agency approximately $70,000 that it claimed Leedy had taken before September 2005 in excess of what he had earned. Leedy appeals, challenging the trial court's denial of a continuance, among other things, including the award to the Agency. Jones and the Agency challenge the trial court's refusal to award judgment against Leedy for the monies taken before September 2005. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Lewis S. Howard, Jr., and Elizabeth S. Dodd, Knoxville, Tennessee, for the appellant, Robert A. Leedy.

Scott D. Hall, Sevierville, Tennessee, for the appellees, The Realty Store, Inc., and Judy L. Jones dba The Realty Store.

James H. Ripley, Sevierville, Tennessee, for the appellees, CNB BancShares, Inc., dba Citizens National Bank.[1]

**OPINION**

I.

On May 1, 2000, The Realty Store, Inc., was formed as a corporation. The original principals in the corporation were Judy L. Jones and an individual by the name of Dennis Howell. According to Jones, when Howell left the Agency, he had all of the corporate documents. Until Leedy became involved with the Agency, the Agency's business consisted primarily of listing properties and selling them on a commission basis.

Leedy undisputedly became involved in the Agency in January 2002, although there is some dispute about the status of his involvement. Leedy claims that he was an equal partner with Jones in a partnership named "The Realty Store" and that the partnership operated the corporation. Jones claims that Leedy was simply an equal shareholder with her in the corporation. There are no minutes of meetings, other than a couple of resolutions authorizing routine banking transactions, and no stock transfer register, at the corporate office. Jones admits that the Agency is a "loosely run" corporation, but insists that it is a corporation. She blames the missing documents on Howell.

---

[1]CNB gave notice through counsel that, as a nominal party, it would not file a brief or participate in oral argument

At the time Leedy joined the Agency, he had a number of property management accounts. He assigned them to the Agency. The accounts generated income by way of commissions charged to the owners of the properties for managing the maintenance and renting of the properties. Leedy maintained an escrow account, as required by the state agency that regulates realtors, into which rents were to be deposited. Leedy wrote checks to the owners for their share of the rent, to vendors as necessary for maintenance of the properties, and to himself. Occasionally, Leedy wrote checks to the Agency. Before he joined the Agency, Leedy opened an account with Tennessee State Bank showing the account owner as "Robert A. Leedy dba Great Smoky Mountain Real Estate Property Management Escrow." When he moved to the Agency, Leedy changed the account to reflect the name of the owner as "Robert A. Leedy dba The Realty Store." The face of the checks reflected that they were drawn on "Realty Store, Inc., Property Management Escrow." In the period January through April 2002, Leedy was the only person authorized to sign checks on the account. In May 2002, Jones was added.

In the Agency, Leedy concentrated on property management, and Jones continued to concentrate on listing and selling properties. She also maintained an escrow account for her sales transactions. It is undisputed that both she and Leedy commingled personal funds with escrow funds.

While Leedy was part of the Agency, either as partner or shareholder or both, he and Jones acquired properties jointly. One was used as the office for the Agency and several other businesses. In addition to the business relationship, Leedy and Jones were romantically involved to the point that Leedy moved in with Jones. The personal relationship fell apart in 2005 and so did the business relationship. In September 2005, Leedy and Jones executed several documents which the chancellor found were intended by the parties to effect a complete settlement of their dealings and accounts. The documents were:

> 1. Quitclaim Deed from Jones to Leedy for property at 1829 Bertie Street, parcel 016.01;

> 2. Quitclaim Deed from Leedy to Jones for property at 1829 Bertie Street, parcel 016.02;

> 3. Transfer of "all . . . right, title and interest in and to Allo'ra, LLC . . . to Judy L. Jones" effective retroactively to April 2, 2004, with accompanying assumption by Jones as buyer of "all liabilities of Allo'ra LLC that have come into existence since April 2, 2004;"

4. Transfer from Judy L. Jones as seller to Robert A. Leedy as buyer of "all her right, title and interest in and to The 1833 House, LLC" effective retroactively to March 1, 2002, with accompanying assumption by Leedy of "all liabilities of The 1833 House, LLC that have come into existence since January 31, 2003;"

5. Transfer from Leedy as seller to Jones as buyer of "all his stock, right, title and interest, in and to The Realty Store, Inc." retroactively effective to May 3, 2000 with accompanying assumption by Jones of all liabilities of "The Realty Store, Inc. that have come into existence since May 3, 2000;" and,

6. Independent contractor agreement whereby Leedy continued an association with the Agency as a "licensee," the principal terms of which are that the Agency will furnish and reimburse Leedy for professional fees and expenses and Leedy will receive a commission based on the income generated for the agency; for property management, the commission was specified as "10% of the total commission received by The Realty Store, Inc."

Other than the broad language concerning "all . . . right, title and interest," the documents did not specify what was to happen to the property management escrow account, and Leedy continued to use it after September 2005 the same as he had before September 2005. He deposited the monies received from tenants into the account, wrote checks to vendors, wrote checks to owners, and used the balance as his own. In 2005, for example, Leedy wrote multiple checks to a local automobile dealership, including one for $21,000 for a new truck Leedy titled in his name. In late 2006, Leedy withdrew all the funds in the escrow account. When Jones learned that Leedy had withdrawn the funds, she reported his actions to law enforcement authorities. Leedy returned the monies that he had withdrawn, but the criminal investigation continued and resulted in an indictment against Leedy on three counts of feloniously obtaining and exercising control over U.S. currency that belonged to Jones and the Agency.

Leedy then filed this action against Jones, the Agency, and two banks as mortgage holder and deposit holder of funds at issue.[2] The verified complaint set forth a myriad of allegations and theories, the essence of which was that Leedy was entitled to receive one-half

---

[2]One of the banks remains a nominal party, and the other was voluntarily dismissed.

of the profits of the jointly-owned business for the time he was there from January 2002 to November 2006, which he had not received, and that Jones had refused to allow him access to the information necessary to determine the amount owed. Jones filed a counterclaim asking for a judgment against Leedy for the funds he had allegedly misappropriated out of the escrow account. Both parties asked that their jointly owned real property be partitioned.

Before the case came to trial on May 20, 2009, Leedy changed counsel twice. His trial counsel made an appearance by order of substitution of counsel entered September 23, 2008. Leedy's new counsel immediately commenced trying to secure documents requested in discovery. Numerous times, document production dates were scheduled and cancelled, once by Leedy's counsel. On April 15, 2009, Leedy's counsel was allowed to inspect documents but was not satisfied with the production. On April 16, 2009, Leedy filed a motion to continue and a motion to compel and for sanctions in which he pointed out that Jones, but not her counsel, appeared at the production and refused to allow inspection and copying of most of the documents requested. After a hearing on May 1, 2009, the court compelled production of the bulk of the documents but denied the motions to continue and for sanctions. The documents were produced for inspection on May 6, 2009, and counsel marked several hundred documents for copying. He received the documents on May 11, 2009. On the morning of the scheduled trial date, Leedy's request for a continuance was renewed and denied.

After hearing the proof we have outlined above, the trial court found it "clear" that Leedy and Jones operated the business with the intention of "a fifty/fifty split." As the trial court stated, "Both sides have said so and there's just not much question about it." The court found that the entity was operating as a corporation and not as a partnership. The court did not make an explicit finding with regard to whether the corporate veil[3] should be pierced, although it did note that corporate "formalities" were "largely disregard[ed]." Although the court did not explicitly state as such, it is implicit in the court's findings that it did not see the need to pierce the corporate veil because it determined that the principals "dissolved their business relationship" and "settled up" as of September 2005. The court found that, in the context of executing the numerous documents relating to jointly-operated businesses and properties, Jones and Leedy were "trying to make some sort of settlement between themselves."

The court found that both parties had taken monies out of the business without necessarily accounting to the other, but found that because of the settlement no monetary award or accounting was in order for transactions that occurred prior to September 2005.

---

[3]Counsel for Leedy conceded that The Realty Store, Inc., was a legally created entity with a charter, but argued that the corporate veil should be pierced.

Thus, the court declined to award Leedy an accounting; but it also refused to award Jones some $70,000 she claimed Leedy had taken out of the property management escrow account in excess of what he had earned as of September 2005. The court did award judgment in favor of the Agency in the amount of $131,489.99 representing the amount Leedy took out of the account after September 2005 in excess of the 10% commission allowed under the independent contractor agreement. After the documents were executed in September 2005, "all he was entitled to receive was the compensation that [the] independent contractor agreement called for." As the trier of fact, the court would not "accredit [Leedy's] testimony that he continued to have a business interest in The Realty Store" after September 2005. As to property that had been divided by mutual deeds and property that had not been divided, the court partitioned the property with allowances and setoffs in a manner that is not a subject on this appeal.

## II.

Leedy has raised the following issues on appeal:

> Whether the trial court erred by refusing to grant [Leedy's] request for a continuance based upon [Jones's] deliberate failure to produce requested discovery documents until immediately prior to trial.

> Whether the trial court erred in awarding judgment in favor of The Realty Store, Inc. after finding such corporation was not validly in existence.

> Whether the trial court erred in finding the business relationship of [Leedy] and [Jones] terminated upon execution of certain transfer documents in light of [Jones's] subsequent acknowledgment of the continuation of such business relationship.

> Whether the trial court erred in awarding judgment against [Leedy] for use and disbursement of funds from [Leedy's] own bank account.

Jones has raised one additional issue:

Whether the Trial Court erred in failing to award an additional $71,761.26 to The Realty Store, Inc. and/or Judy Jones based upon [Leedy's] conversion of business funds.

## III.

The trial court's findings of fact made after a bench trial are reviewed *de novo* with a presumption that they are correct unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); **Blair v, Brownson**, 197 S.W.3d 681, 684 (Tenn. 2006). Determinations of law are reviewed *de novo* with no presumption of correctness. **Id**. at 683. Decisions on a discovery matter will not be reversed unless a clear abuse of discretion is shown. **Benton v. Snyder**, 825 S.W.2d 409, 416 (Tenn. 1992). Likewise, the standard by which we review a trial court's decision on whether to grant or deny a continuance is for abuse of discretion. **Knight v. Knight**, 11 S.W.3d 898, 905 (Tenn. Ct. App. 1999). Under that standard, we will not substitute our discretion for that of the trial court, but we will examine the trial court's decision to see whether it has taken the applicable law and relevant facts into account. **Willingham v. Shelby County Election Commission**, No. W2004-00230-COA-R3-CV, 2004 WL 2808905 at *3 (Tenn. Ct. App. W.S., filed Sept. 23, 2004) (*citing* **Myint v. Allstate Ins., Co.**, 970 S.W.2d 920, 927 (Tenn. 1998) and **Ballard v. Herzke**, 924 S.W.2d 652, 661 (Tenn. 1996)).

## IV.

## A.

We begin with the issue of whether the trial court correctly found that the parties "settled up" in September 2005 and that thereafter Leedy did not have an ownership interest in the Agency going forward. Leedy argues that the course of conduct between the parties demonstrates that it was business as usual after September 2005, no different than it had been before September 2005. Leedy's argument is premised upon his own self-serving testimony and one document faxed from Jones to Leedy wherein she complained that he had not infused any money into the business. We acknowledge that Jones's criticism of Leedy in that document is puzzling, but it does not help Leedy without proof that Leedy responded by denying the accusation or by infusing money into the business. Leedy's failure to support the business financially weighs against joint ownership as much if not more than Jones's puzzling criticism that he should support the business weighs in favor of joint ownership. We cannot accept the argument that nothing changed in September 2005, in the face of all the documents executed in that time frame, including the independent contractor agreement. We also cannot accept Leedy's argument in the absence of a satisfactory explanation as to why the principals executed the documents if they did not mean to change the relationship.

The trial court was in a better position than this court to examine Leedy's demeanor and decide whether to believe or disbelieve his testimony. *See Coleman Management, Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). We therefore hold that the trial court did not err in finding that Leedy's ownership interest in the business terminated in September 2005 and that thereafter he was operating as an independent contractor paid a commission on income generated by property management. With that issue decided, we can better address the other issues in the case.

B.

We will next consider the issue of whether the trial court abused its discretion in denying a continuance. Leedy's argument that the trial court abused its discretion is based upon the fact that voluminous records were produced only nine days before trial leaving counsel with insufficient time to review the financial documents check-by-check and charge-by-charge. Jones points out that discovery problems were not limited to one side of this case. She says that Leedy complicated her case by refusing to answer discovery requests on the basis of his fifth amendment right against self-incrimination. Leedy purports to tell us in his brief, despite the absence of a transcript of the hearings on the motions to continue, that the trial court made the decision on the basis of concerns about its "backlog of cases." We are not persuaded by Leedy's argument premised, at least in part, on material that is not in the record. On the basis of what is in the record, we find no abuse of discretion in the trial court's refusal to grant a continuance. Leedy employed three different counsel between the time of filing the complaint and going to trial. Trial counsel had approximately eight months to work on a case that was tried in a matter of hours with only two witnesses. Counsel for Leedy was able to present the court with an organized binder of financial documents that he considered relevant to the case. As it turned out, in light of the September 2005 settlement, the financial documents Leedy had trouble securing had little bearing on the outcome of the case. The documents that were central to the case, and formed the basis for the monetary award, were the banking records for the property management escrow account. Leedy admitted on cross-examination that he could have walked into the bank and obtained access to these records. Accordingly, we find no abuse of discretion in the trial court's refusal to grant a continuance.

C.

We come now to the issue of whether the trial court erred in awarding a judgment against Leedy for his use of funds in a bank account that he opened. Leedy's argument, as our phrasing of the issue suggests, is premised largely on the notion that Leedy opened the property management escrow account in his name and that it stayed in his ownership even after September 2005. This is another example of the "poor, sloppy, informal . . . fashion,"

as found by the trial court, in which the principals did business; it is not a reason to ignore the realities of the relationship after September 2005. As found by the trial court, the independent contractor agreement makes it clear that after September 2005, the funds generated by property management belonged to the Agency and Leedy was entitled to receive only a 10% commission. It cannot be that Leedy can lay claim to 100% of the monies generated simply because he was the first to lay hold on the funds and deposit them in "his" account. Jones testified and supplied an exhibit reflecting her calculation of the excess funds Leedy pulled out of the account. We find that the evidence does not preponderate against the trial court's acceptance of that testimony and exhibit as to the amount of monies due the Agency.

D.

This is an opportune time to address the issue raised by Jones and the Agency as to whether the trial court also should have awarded her or the Agency approximately $70,000 that Leedy took out of the property management account *before* September 2005. We find no merit in this argument. First, it ignores Leedy's ownership interest in the Agency up until September 2005 and his entitlement to make decisions on behalf of the business to the same extent as Jones. To the same extent that Jones was entitled to determine that funds in the escrow account used for sales transactions had been earned by her efforts and to receive them out of the account as earned, Leedy was entitled to pay himself funds out of the management escrow account. We are not condoning this method of handling escrow funds. We are simply saying that Jones did not have the sole right before September 2005 to transfer company funds and decide how to pay them out of the business. We have held that the evidence does not preponderate against the finding that the principals intended a division and settlement of their business affairs when they executed documents in September 2005, and we think to hold Leedy responsible to the Agency (or Jones) for the use of funds in the account before September 2005 would be inconsistent with that holding. Once the documents, including the assignment by Leedy of "all his stock, right, title and interest, in and to The Realty Store, Inc.," and the independent contractor agreement, were executed, things changed. The funds in the account at that time became the Agency's and Leedy became subject to answering to the Agency and Jones for his use of management earnings.

E.

The last issue we address is whether the trial court erred in awarding a judgment in favor of the Agency, which Leedy argues now is a non-existent entity. We believe Leedy tries to prove too much. The trial court did not find that the entity had no existence, and Leedy did not argue at trial that the entity had no existence. Leedy conceded to the trial court that the entity was legally created with a charter, but argued that the trial court should

disregard the corporate identity. Although the trial court questioned the informal manner in which the principals did business, the court did not, contrary to Leedy's argument, make an express finding that the entity was not in existence at the time of trial. We are aware of law holding that a person may not use a corporation as his or her alter ego so as to inflict harm on innocent parties, and that disregard of corporate formalities is a factor that bears on whether the corporation is a mere alter ego of an individual. *See Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). However, we are aware of no law, and Leedy has cited us to none, which holds that disregard of corporate formalities automatically renders a corporate charter void *ab initio*. To the contrary, a corporation is presumed to be a distinct entity that is disregarded only with "great caution" as necessary to "accomplish justice." *Id*. Justice does not require that we allow Leedy to walk away with money that belonged to the Agency just because it was operated in an informal manner.

We also note that, at most, Leedy's argument would justify modification of the judgment to reflect Jones, and not the entity, as the holder of the judgment; Leedy's argument would not justify nullification of the judgment even if we were to accept it as meritorious. For this reason, we can see no harm to Leedy from the informalities. Accordingly, we hold that the trial court did not err in entering judgment against Leedy and in favor of The Realty Store, Inc. in the amount of $131,489.99.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to Robert A. Leedy. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE